FILED
2025 Dec-23  PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| BRIDGETT WATSON ADAMS, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>3M COMPANY, et al., )<br><br>Defendant. ) | Case No. 4:24-cv-00832-CLM |

## PLAINTIFFS' OPPOSITION AND BRIEF IN SUPPORT TO DEFENDANT 3M COMPANY'S RULE 12(c) MOTION TO DISMISS

Comes now, the undersigned counsel, Dagney Johnson and submits Plaintiffs' Opposition and Brief in Support To Defendant 3M Company's Rule 12(c) Motion to Dismiss.

## INTRODUCTION

This action arises from PFAS contamination of Gadsden's drinking-water supply and the present, ongoing harms to the residents who rely on that water every day. Plaintiffs allege that 3M designed, manufactured, marketed, and sold PFOS and PFOA-containing products, including from its Decatur, Alabama plant, knowing those chemicals were persistent, mobile, and bioaccumulative, and that their use in

Dalton, Georgia carpet mills would contaminate downstream waters used by Gadsden Water. See Compl. ¶¶ 3–6, 9–16, 53–57.

**According to the Complaint:**

- PFOS and PFOA from products supplied by 3M and Fictitious Defendants were discharged via industrial wastewater from Dalton carpet facilities into the Conasauga River, then into the Coosa River, and ultimately into the raw-water intakes used by Gadsden Water to supply Plaintiffs. Compl. ¶¶ 3, 6, 9–16, 53–57.

- These chemicals have accumulated and continue to accumulate in the Coosa River upstream of Gadsden's intake, in water, sediment, fish, and other biota, at levels "dangerous to humans." Compl. ¶¶ 17, 56.

- Testing of Gadsden Water's treatment plants and wells, including ADEM sampling in 2022, has shown PFOS at 27 ppt and PFOA at 25 ppt—far above EPA's 2016 health advisory of 0.07 ppb combined, and far above EPA's 2022 interim health advisory levels of 0.0004 ppt for PFOA and 0.02 ppt for PFOS. Compl. ¶¶ 7–8, 18, 21, 23.

- Plaintiffs, all Gadsden Water customers, have used this contaminated water for drinking, cooking, gardening, and other domestic purposes, and they "have been and continue to be exposed" to PFOS and PFOA, which contaminate their water and properties and create ongoing risk to their health and safety. Compl. ¶¶ 1, 4–5, 12–13, 17–22, 25, 30–31, 35, 39, 46, 56–57, 63.

Plaintiffs seek monetary relief for real property damage, loss of use of property, out-of-pocket expenses, reasonably ascertainable future expenses, and emotional distress, along with punitive damages and injunctive relief to stop further contamination. Compl. ¶¶ 25, 30–31, 35, 37, 44, 50–51, 58, 63, Prayer for Relief. 3M asks the Court to wipe out all of these claims at the pleadings stage, arguing (1) that they are time-barred under *Ex parte DuPont de Nemours, Inc.*, 2025 WL

1009062 (Ala. Apr. 4, 2025), and (2) that Plaintiffs have not alleged a legally cognizable injury under Alabama law.

Those arguments fail for three independent reasons:

## I.    Statute of Limitations

*Ex parte DuPont* addressed when Gadsden Water, a regulated utility with its own testing data and regulatory duties, suffered "first legal injury." It did not decide when downstream residential customers like Plaintiffs first suffered injury or discovered contamination. Plaintiffs allege ongoing contamination and continuing injuries; nothing on the face of the Complaint conclusively time-bars their claims.

## II.    Injury

This is not a "risk-only" or "monitoring-only" lawsuit. Plaintiffs plead present physical contamination of their drinking water and present property damage and emotional distress arising from that contamination. *Hinton* and *Pfizer* involved plaintiffs with no present injury that were concerned for the potential of a future injury to manifest. The Plaintiffs in this case are asserting distinguishable claims from those relied on by Defendant.

## III.    Pleading Sufficiency

The Complaint specifically alleges duty, breach, causation, and damages for negligence and wantonness (Counts I and VI), and classic property and personal injuries for nuisance, trespass, battery, and strict liability (Counts II–V). Compl. ¶¶ 26–63. At the very least, if the Court finds any pleading deficiency, Plaintiffs should be granted leave to amend, rather than having their claims dismissed with prejudice.

## LEGAL STANDARD

A motion under Rule 12(c) is judged under the same standard as Rule 12(b)(6). The Court must accept as true all well-pleaded factual allegations, draw all reasonable inferences in Plaintiffs' favor, and determine whether the Complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022). Statute-of-limitations defenses are typically fact-intensive and "are not ordinarily grounds for Rule 12 dismissal unless it is apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845–46 (11th Cir. 2004).

If a complaint is deficient but could be cured by additional factual allegations, Rule 15(a)(2) directs that leave to amend "should freely be given when justice so requires." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *Cook v. Randolph Cnty.*, 573 F.3d 1143, 1150–51 (11th Cir. 2009).

## ARGUMENT

I.   **The Complaint Does Not Establish That Plaintiffs' Claims Are Time-Barred**

3M's limitations argument rests almost entirely on *Ex parte DuPont*, but that decision does not conclude that all PFAS-related claims by Gadsden residents are time-barred as a matter of law. Nor does the Complaint contain any concession that would allow the Court to resolve limitations at the pleadings stage.

### A.   **DuPont's accrual analysis is specific to the water utility not individual customers**

In *Ex parte DuPont*, the plaintiff was Gadsden Water, which alleged injuries to its system and finances from PFAS contamination. The Alabama Supreme Court held that Gadsden Water's "first legal injury" occurred in 2016, when it had PFAS testing results over then-applicable EPA health-advisory levels and incurred expenses and operational impacts in response. The Court's analysis focused on:

- **The water authority's regulatory duties to monitor and report water-quality data; and**
- **Its actual knowledge of PFAS contamination and resulting operational changes.**

The Court did not hold that all downstream customers automatically share the same accrual date as the utility, or that residents are deemed to have the utility's regulatory knowledge. Under Alabama law:

"A cause of action accrues and the running of the limitations period begins when the party in whose favor it arises is entitled to maintain an action

thereon." *Ex parte Abbott Lab'ys*, 342 So. 3d 186, 194 (Ala. 2021) (emphasis added).

Here, the "party in whose favor" the causes of action arise are individual Gadsden Water customers—not the utility. They are not alleged to have performed their own PFAS testing or to have received the same data Gadsden Water had in 2016. The Complaint does not state when each Plaintiff first learned of PFAS contamination, and it certainly does not admit that Plaintiffs understood or were aware of any injuries in 2016. Given that *Ex parte DuPont* dealt with a different plaintiff with different duties and knowledge, it cannot be used on a Rule 12(c) motion to conclusively bar all claims by these Plaintiffs.

Defendants' effort to bootstrap the Water Board's prior settlement with DuPont into a limitations bar against Plaintiffs fundamentally conflates two distinct sets of claims, two distinct plaintiffs, and two distinct injuries. Under Alabama law, the statute of limitations is triggered by the plaintiff's injury and knowledge, not by the injury or knowledge of a different entity.

First, the Water Board's claims and injuries are institutionally and legally distinct from those of the end-user homeowners. The Water Board's claim against DuPont was based on its injuries as a utility and public entity. By contrast, the homeowner Plaintiffs seek redress for injuries to themselves and their property as alleged in their complaint. Alabama courts have long recognized that property-based

and personal injuries suffered by individual landowners are separate and independent from injuries suffered by governmental or corporate entities that operate infrastructure. See, e.g., *Reichert v. City of Mobile*, 776 So. 2d 761, 764–66 (Ala. 2000) (treating homeowners' repeated flooding and invasion as their own actionable injury, distinct from municipal actions or agreements).

Second, the limitations period for the Water Board's claims turns on the Board's knowledge and injury, not on when homeowners were injured or could reasonably discover their injuries. Alabama applies an accrual rule that ties the start of the limitations period to the plaintiff's own injury and, in toxic-tort settings, to when the plaintiff knew or reasonably should have known of that injury. See *Payton v. Monsanto Co.*, 801 So. 2d 829, 835–36 (Ala. 2001) (toxic-tort claims accrue when the plaintiff suffers a legally cognizable injury and has, or should have, knowledge of that injury). Whatever information the Water Board possessed when it sued or settled with DuPont is not automatically imputed to every individual customer. The Board's decision to compromise its own claims says nothing about when these Plaintiffs first experienced compensable harm to their property, or when they first knew or should have known that PFAS contamination was damaging their homes and water supplies.

Alabama law does not permit a defendant to invoke the accrual or settlement of a different plaintiff's claims to cut off the limitation period for later-filed claims

by nonparties who suffered distinct injuries. See, e.g., *City of Clanton v. Johnson,* 245 Ala. 470, 17 So. 2d 669, 671–72 (1944) (recognizing separate, recurring causes of action for landowners where a continuing nuisance or invasion interferes with individual property rights). The timing and nature of homeowners' injuries are materially different from those of the Water Board. Homeowners' injuries occur and worsen each time contaminated water reaches their taps and invades their plumbing and fixtures, each time they are forced to purchase alternative water or filtration, and each month their properties remain stigmatized by PFAS contamination and associated health concerns. Those are ongoing, recurring injuries to Plaintiffs' property and use and enjoyment, not a one-time institutional injury to the utility. Courts confronted with PFAS contamination have acknowledged that downstream users suffer their own ongoing harms as water they purchase and use at their properties is contaminated. See *Johnson v. 3M Co.,* 563 F. Supp. 3d 1253, 1261–66 (N.D. Ga. 2021) (summarizing allegations that ratepayers suffer property damage and ongoing harms from PFAS-contaminated drinking water).

Finally, even where a governmental entity and private landowners are affected by the same underlying contamination, Alabama law treats the accrual of each plaintiff's cause of action separately, based on when that plaintiff's injuries occur and become discoverable, and recognizes that continuing invasions or nuisances may give rise to fresh claims over time. *Reichert,* 776 So. 2d at 765–66 (continuing

tort where repeated invasions of property occur); *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983) (continuing-tort doctrine where wrongful conduct and resulting injury recur). Thus, even if the Water Board's claims against DuPont accrued earlier and were resolved by settlement, that has no bearing on when these homeowner Plaintiffs' claims accrued. Their statute of limitations is triggered by their injuries and their knowledge and not by what the utility knew, alleged, or settled years earlier.

> **B.    The Complaint alleges ongoing contamination and injuries; accrual and discovery are factual issues**

The Complaint is clear that PFOS and PFOA contamination of Plaintiffs' water and properties is ongoing:

> **- PFOS and PFOA "have and continue to accumulate in the water, sediment, fish and other biota in the Coosa River upstream from Gadsden Water's intake at levels that are dangerous to humans." Compl. ¶¶ 17, 56.**

> **- ADEM's 2022 sampling of Gadsden Water's treatment plants and wells showed PFOS at 27.0 ppt and PFOA at 25.0 ppt—still well above EPA's 2016 and 2022 advisory levels. Compl. ¶¶ 18, 21, 56–57.**

> **- Gadsden Water "began regular testing" for PFOS and PFOA after the 2016 EPA health advisory and "has consistently found PFOA and PFOS levels that combine to meet or exceed" EPA's interim limits. Compl. ¶¶ 7, 18, 21, 23.**

- The current filtration system "is not capable of removing or reducing the high levels of PFOA and PFOS" in Plaintiffs' water supply. Compl. ¶ 24.

- Plaintiffs "have been and continue to be exposed" to these chemicals whenever they "consume and/or use the contaminated water" or use it on their properties. Compl. ¶¶ 19, 21–22, 25, 30–31, 35, 39, 46, 56–57.

These allegations describe a continuing tort with repeated distribution of contaminated water and repeated invasion of Plaintiffs' properties and bodies by PFAS. Under Alabama's continuing-tort doctrine, "When repeated tortious conduct has repeatedly and continuously injured a plaintiff, the running of the statutory period of limitations is tolled until the tortious conduct ceases." *Ex parte McKesson Corp.*, 393 So. 3d 1180, 1201 (Ala. 2023) (cleaned up). In *Ex parte DuPont*, the Court declined to apply this doctrine to Gadsden Water's complaint, noting that it did not allege ongoing PFAS manufacture/sale reaching its system. 3M's motion ignores that Plaintiffs here do allege ongoing PFAS-related conduct and ongoing contamination. Compl. ¶¶ 3–6, 9–17, 21–24, 53–57.

A continuing tort exists where "the wrongful conduct is repeated, and so long as it continues, the cause of action accrues, and the statute of limitations does not begin to run until the tortious conduct ceases." *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983) (recognizing that repeated wrongful acts can give rise to a continuing tort); see also *Payton v. Monsanto Co.*, 801 So. 2d 829, 835–36 (Ala.

2001) (acknowledging that in toxic-tort contexts, claims may accrue when a harmful exposure and resulting injury occur and may involve continuing harm from exposure).

This case does not concern a single, historical release with merely residual effects. Plaintiffs allege that 3M has, for years and into the relevant limitations period, continuously manufactured, marketed, and supplied PFAS and PFAS-containing products to local industrial users in the impacted watershed with knowledge that those chemicals would be discharged into wastewater and ultimately into drinking-water sources serving Plaintiffs' homes. See, e.g., *Adams v. 3M Co.*, 67 F.4th 845, 853–55 (6th Cir. 2023) (describing allegations that 3M and other manufacturers supplied PFAS over decades, leading to ongoing contamination and continuing injuries to residents). Plaintiffs further allege that 3M has persistently failed to provide adequate warnings or to take reasonable steps to abate the known contamination, despite its superior knowledge of PFAS persistence, toxicity, and the inability of conventional treatment systems to remove these chemicals.

Consequently, PFAS are not merely "left over" from some past event; they continue to enter and migrate through Plaintiffs' water supplies and onto and into Plaintiffs' properties each day. Courts faced with similar PFAS contamination allegations have recognized that such contamination is "long-running," resulting from continuous discharges and ongoing failures to adequately control PFAS

releases. See *Johnson v. 3M Co.*, 563 F. Supp. 3d 1253, 1261–66 (N.D. Ga. 2021) (reciting allegations of long-running PFAS releases into the Conasauga and Coosa rivers and contamination of downstream drinking water); *Jarrod Johnson v. Water, Light & Sinking Fund Comm'n of the City of Dalton*, 74 F.4th 1308, 1313–17 (11th Cir. 2023) (discussing standing based on ongoing PFAS contamination of water used at plaintiffs' properties).

Each time Plaintiffs draw water from their taps, they receive PFAS-contaminated water that physically invades and accumulates in their plumbing and fixtures, diminishes the safe use and enjoyment of their homes, and further stigmatizes and depresses the market value of their properties. That is recurring, present injury. Courts have recognized that where contaminants continually enter or remain on a plaintiff's property, a continuing nuisance or trespass may exist, and new causes of action accrue as long as the invasion and resulting harm persist. See, e.g., *Reichert v. City of Mobile*, 776 So. 2d 761, 764–66 (Ala. 2000) (treating repeated flooding/invasion as a potential continuing tort); *City of Clanton v. Johnson*, 245 Ala. 470, 17 So. 2d 669, 671–72 (1944) (recognizing that a continuing nuisance exists where a harmful condition recurrently invades property and interferes with its use and enjoyment).

Under Alabama's continuing-tort principles, when a defendant maintains or **permits** a harmful condition that repeatedly invades or injures a plaintiff, the cause

of action is treated as continuing and the statute of limitations does not begin to run until the wrongful conduct and resulting invasion cease. *Moon*, 435 So. 2d at 220; *Reichert*, 776 So. 2d at 765–66. Here, Plaintiffs have alleged an ongoing course of wrongful conduct by 3M, continuing PFAS supply into the affected industrial system, continuing failure to warn, and continuing failure to abate a known contamination that, in turn, causes ongoing intrusive contamination of Plaintiffs' water and property. That is exactly the type of recurring wrong and recurring injury that fits within the continuing-tort doctrine. At this stage, those allegations must be accepted as true, and 3M's statute-of-limitations defense cannot be resolved in its favor on a motion to dismiss or early summary judgment. Plaintiffs' nuisance, trespass, and related PFAS-based tort claims against 3M should therefore proceed.

The date when 3M discontinued its manufacture and sell of the PFOS/PFOA containing products is not established and should not be considered as a fact for the purposes of the present Motion. In its Motion, 3M contended that the Plaintiffs' statute of limitations are not tolled by the continuous tort doctrine as 3M ceased manufacturing and selling PFOS and PFOA in 2002 which is 23 years before the Plaintiffs filed their Complaint. 3M references in its brief that 3M filed in the Federal Register the fact that 3M had proof of 3M discontinuing the sale and manufacturing of PFOA and PFOS containing products in 2002. 3M asks the Court to take judicial notice of these materials in order to provide the foregone conclusion that 3M could not have continued to commit

the tortious acts giving rise to the continuing tort doctrine in Alabama. Contrary to 3M's contentions, 3M continued to sell PFAS containing products which it manufactured and sold to its customers through December of 2025. (See Exhibit 1 attached, December 20, 2022 3M News Release.) This News Release from 3M contradicts the information put forward in Defendant's brief and at a very minimum puts the fact into question for which Plaintiff requires further discovery. (See Exhibit 2, Plaintiff's Rule 56 Affidavit). As there are clear discrepancies between the documents relied on by 3M and their own News Release, further discovery is required so as to identify 3M's actual conduct related to the sales and manufacture of the PFOA/PFOS containing products. (Exhibit 2).

At a minimum, whether Plaintiffs' individual claims accrued more than two (or six) years before suit, and whether the continuing-tort doctrine applies, are questions of fact that cannot be resolved against Plaintiffs on a Rule 12(c) motion.

### C. Plaintiffs allege new and incremental harms within the limitations period

Even if PFAS contamination first reached Plaintiffs' water more than two years before June 17, 2024, Plaintiffs allege new and incremental injuries within the limitations period:

- **Distribution of PFOS and PFOA-contaminated water has continued through Gadsden Water's system and into their homes. Compl. ¶¶ 1–2, 16–18, 21–24, 33, 39, 46, 56–57.**

- Continued use of this water for drinking, cooking, cleaning, and gardening means continued exposures and continued contamination of their properties. Compl. ¶¶ 1, 4–5, 19, 21–22, 25, 30–31, 35, 39, 46, 56–57.

- Plaintiffs' real property has been, and continues to be, harmed by use of contaminated water on and within their properties, including for gardening, cooking, and cleaning. Compl. ¶¶ 19, 21–22, 25, 30–31, 35, 39, 44, 56–57, 63, Prayer ¶¶ (a)–(c).

Alabama law recognizes that later-occurring harms may be actionable even when related harms originated earlier. See *Ex parte Abbott Lab'ys*, 342 So. 3d at 194; *Kelly v. Shropshire*, 199 Ala. 602, 75 So. 291, 292 (1917). 3M's request that the Court declare all claims extinguished by limitations at the pleadings stage overreaches both the Complaint and Alabama accrual principles.

## II.   Plaintiffs Plead Cognizable Injuries Under Alabama Law

3M next argues that Plaintiffs have not alleged a "legally sufficient" injury, pointing to *Hinton, Pfizer, Inc. v. Farsian*, 682 So. 2d 405 (Ala. 1996), *Southern Bakeries, Inc. v. Knipp*, 852 So. 2d 712 (Ala. 2002), and *W. Morgan–E. Lawrence Water & Sewer Auth.* v. 3M Co., 208 F. Supp. 3d 1227 (N.D. Ala. 2016). But those cases dealt with risk-only or fear-based claims (or purely economic expectations), not the type of present property and exposure-based harms alleged here.

### A.   Hinton addresses risk-only monitoring claims without present injury; this Complaint alleges contamination of water and property

In *Hinton*, the plaintiff alleged:

- Exposure to PCBs,
- Increased risk of future disease, and

- A desire for medical monitoring.

Present disease, bodily change, or physical damage to property was not alleged in *Hinton*. The Alabama Supreme Court declined to recognize a new cause of action based solely on exposure + risk + monitoring, holding that such allegations do not, by themselves, amount to a compensable injury. 813 So. 2d at 828–30. Plaintiffs here are not bringing that kind of claim. They allege present contamination, personal injury and property damage, including:

- **That PFOS and PFOA "have and continue to accumulate" in the Coosa River upstream of Gadsden Water's intake, at levels "dangerous to humans." Compl. ¶¶ 17, 56.**

- **That water supplied by Gadsden Water, used by Plaintiffs for "drinking, cooking and other domestic purposes," is contaminated with PFOS and PFOA. Compl. ¶¶ 1–2, 4–5, 16–18, 21–24, 33, 39, 46, 56–57.**

- **That Plaintiffs "have been and continue to be exposed" to these toxic chemicals when they consume and use the contaminated water and when they use it on their properties, including for gardening, cooking, and cleaning. Compl. ¶¶ 1, 4–5, 12–13, 17–22, 25, 30–31, 35, 39, 46, 56–57.**

- **That PFOS and PFOA \*\*bioaccumulate\*\* and have "stable carbon-fluorine bonds that resist any environmental breakdown," and that their presence in Plaintiffs' tap water necessarily contaminates real property where the water is used. Compl. ¶¶ 11–13, 17, 21–22, 56–57.**

- **That as a result, Plaintiffs have suffered property damage, loss of use of property, emotional distress, and out-of-pocket and future expenses, and require injunctive relief to prevent continuing contamination. Compl. ¶¶ 19, 21–25, 30–31, 35, 37, 39, 44, 50–51, 58, 63, Prayer ¶¶ (a)–(c).**

These are current, ongoing harms not future risks with no present physical impact. *Hinton* explicitly addressed a claim where there was no asserted physical injury; it did not hold that contamination of a person's drinking water and property by toxic chemicals is not an injury.

**B.    *Pfizer* and *Southern Bakeries* likewise addressed claims without present physical harm to person or property**

*Pfizer* involved a plaintiff whose implanted heart valve was working properly and his claim related to the fear that the valve might fail in the future. 682 So. 2d at 406–07. The Court held such fear, without present malfunction or physical harm, is not compensable under Alabama law. *Southern Bakeries* dealt with economic expectations related to a union boycott and business losses, not physical contamination of property or personal exposure injuries. 852 So. 2d at 718–21. Here, the Complaint alleges physical contamination of Plaintiffs' water and properties and ongoing exposures to toxic chemicals known to be dangerous to humans. Compl. ¶¶ 1–2, 4–5, 6–8, 9–22, 17–18, 21–24, 30–31, 33–35, 39, 44, 46, 52–57, 63, Prayer ¶¶ (a)–(c). These allegations are materially different from the mere fear or economic expectation claims in *Pfizer* and *Southern Bakeries*.

**C.    Plaintiffs allege classic property injuries recognized by *Borland* and related cases**

Alabama has long recognized that physical invasion of substances onto or into another's property supports claims for nuisance and trespass. In *Borland v. Sanders*

*Lead Co.*, the Alabama Supreme Court held that airborne lead particulates depositing on the plaintiff's property constituted a trespass and nuisance. 369 So. 2d 523, 529–30 (Ala. 1979). Plaintiffs' nuisance and trespass counts track that framework:

> - **Count II alleges that 3M and Fictitious Defendants, through their PFOS and PFOA discharges into Coosa River tributaries, created a continuing nuisance by contaminating Plaintiffs' water supply, causing them "hurt, inconvenience, and harm," and threatening their health and well-being. Compl. ¶¶ 32–37.**

> - **Count III alleges that PFOS and PFOA manufactured and supplied by 3M and Fictitious Defendants are "found in the water supplied by Gadsden Water to the Plaintiffs," and that these chemicals invaded Plaintiffs' property without their consent, impairing the use of their property and diminishing its value. Compl. ¶¶ 38–44.**

Additionally, the Complaint alleges that the presence of PFOS and PFOA in tap water "continue[s] to be present" and "would necessarily contaminate any real property where such tap water would be used for indoor and outdoor purposes," including gardening, cooking, and cleaning. Compl. ¶¶ 21–22, 25, 30–31, 35, 39, 44, 56–57, 63. Those allegations are analogous to *Borland's* conception of physical invasion and interference with property rights. *W. Morgan–E. Lawrence* dealt with a different plaintiff (a water authority), a different procedural posture, and different legal theories and thus not applicable to the present case.

## III.   Duty, Breach, Causation, and Damages Are Plausibly Alleged

In addition to statute of limitations and injury arguments, 3M contends that the Complaint does not adequately plead the elements of Plaintiffs' claims. The text of the Complaint shows otherwise.

## A.    Negligence (Count One)

To plead negligence, Plaintiffs must allege duty, breach, causation, and damages. They do:

- DUTY: Plaintiffs allege that 3M and Fictitious Defendants owed them a duty "to exercise due care in the design, marketing, development, distribution, sale, manufacture, release, handling, supply, and/or use of PFOA and products containing PFOS." Compl. ¶ 27.

- BREACH: Plaintiffs allege that 3M and Fictitious Defendants:

- Supplied and sold PFOS/PFOA-containing products into the stream of commerce to around 150 carpet manufacturing facilities in Dalton, Georgia; Knew that use of these products would contaminate Plaintiffs' water supply downstream; Failed to warn those facilities of available alternatives and of the risk of contaminating Plaintiffs' water; and Disseminated misleading and inadequate information and warnings about PFOS and PFOA. Compl. ¶¶ 3, 6, 9–11, 14–15, 27–29, 53–55.

- CAUSATION: Plaintiffs allege a detailed causal chain:

- 3M and Fictitious Defendants manufactured PFOS and PFOA products in Decatur, Alabama and sold them to carpet manufacturers in Dalton; Industrial wastewa0ter and runoff from those facilities, containing high levels of PFOS and PFOA, reached the Conasauga River; The Conasauga is a major tributary to the Coosa River, upstream from Gadsden Water's intake; PFOS and PFOA have accumulated in water, sediment, and biota in the Coosa River; and Gadsden Water uses the Coosa as its main source to provide drinking water directly to Plaintiffs, who have thus been and continue to be exposed. Compl. ¶¶ 3–6, 9–18, 20–24, 53–57, 39, 46.

- **DAMAGES**: Plaintiffs allege that, as a direct and proximate result of Defendants' acts and omissions:

- Their drinking water has been contaminated; Their properties have been contaminated and diminished in value; hey have suffered emotional distress; and They have incurred and will incur out-of-pocket and future expenditures, including mitigation and the need for injunctive relief to stop continued contamination.  Compl. ¶¶ 19, 21–22, 25, 30–31, 35, 37, 39, 44, 50–51, 58, 63, Prayer ¶¶ (a)–(c).

Plaintiffs have plead the required allegations to put forth a plausible claim for negligence in their Complaint.

> **B.    Nuisance, trespass, battery, strict liability, and wantonness (Counts II–VI)**

Plaintiffs have plead specific factual allegations within their Complaint to support the remaining counts of nuisance, battery, strict liability and wantonness:

- **Nuisance (Count Two)**: Plaintiffs plead that 3M and Fictitious Defendants' discharge of PFOS and PFOA into Coosa River tributaries has created a continuing nuisance by contaminating Plaintiffs' water supply, thereby causing hurt, inconvenience, harm, and ongoing risk to health. Compl. ¶¶ 32–37.

- **Trespass (Count Three)**: Plaintiffs allege that 3M and Fictitious Defendants continued to manufacture and supply PFOS and PFOA, knowing with substantial certainty that doing so would contaminate Plaintiffs' water supply; that PFOS and PFOA have invaded their properties via the water supplied by Gadsden Water; that Plaintiffs did not consent; and that this continuing trespass has impaired their use and diminished the value of their property. Compl. ¶¶ 38–44.

- **Battery (Count Four)**: Plaintiffs allege that, as a result of Defendants' conduct, PFOS and PFOA have contaminated the water supply; that the

contaminated water has touched and contacted Plaintiffs and their properties; that Defendants knew or were recklessly indifferent to the certainty of this harmful contact; and that Plaintiffs have been and continue to be harmed by this battery. Compl. ¶¶ 45–51.

- **Strict liability(Count Five)**: Plaintiffs allege that Defendants' design, manufacture, and sale of PFOS and PFOA products into the stream of commerce for use by Dalton carpet mills, resulting in high levels of PFOS and PFOA in industrial wastewater, runoff, and ultimately in the Coosa River and Plaintiffs' water supply and properties, constitutes an abnormally dangerous activity for which Defendants are strictly liable. Compl. ¶¶ 52–58.

- **Wantonness (Count Six)**: Plaintiffs allege that Defendants owed a duty to exercise due and reasonable care in their manufacturing and chemical-supply operations "to prevent the discharge of PFOA and PFOS into the Plaintiffs' water supply," but that they acted wantonly and recklessly, knowing or having reason to know of the likely impact, harm, damage, and injury their conduct would have on Plaintiffs and their property. Compl. ¶¶ 59–63.

3M may dispute these allegations on the merits, but under Rule 8 Plaintiffs have plainly given fair notice of their claims and alleged facts that, if proven, would entitle them to relief.

## IV.    Plaintiffs Should Be Granted Leave to Amend

Even if the Court were to conclude that some claim or element is insufficiently plead in light of *Ex parte DuPont*, *Hinton*, or other authority, the case should not be dismissed with prejudice at the Rule 12(c) stage. At this point in the case, Plaintiffs should be granted leave to amend their complaint in order to cure any deficiencies with their current pleadings. Plaintiffs have given no suggestion of bad faith or undue delay and an amendment would not prejudice 3M. Under Rule 15(a)(2) and

Eleventh Circuit precedent, Plaintiffs should be afforded an opportunity to amend before any dismissal with prejudice. *Bryant*, 252 F.3d at 1163; Cook, 573 F.3d at 1150–51. If the Court believes further detail is needed, Plaintiffs can amend to, for example:

- **Elaborate on the timing and circumstances by which Plaintiffs became aware of PFOS and PFOA contamination and associated health advisories;**

- **Add further factual detail regarding ongoing contamination and exposure during the limitations periods; and**

- **Flesh out particular categories of damages—e.g., specific out-of-pocket expenditures and property impacts.**

The appropriate course, if any refinement is deemed necessary, is to allow amendment, not to enter judgment on the pleadings.

## CONCLUSION

The Complaint alleges that 3M and Fictitious Defendants supplied PFOS and PFOA-containing products in a way that foreseeably and actually contaminated the Coosa River, Gadsden Water's supply, and, ultimately, Plaintiffs' drinking water and properties. It alleges that Plaintiffs have been and continue to be exposed to these toxic chemicals and have suffered and continue to suffer property damage, loss of use, emotional distress, and other harms. Accepting those allegations as true and drawing all reasonable inferences in Plaintiffs' favor:

- The Complaint does not reveal, on its face, that Plaintiffs' claims are time-barred; *Ex parte DuPont's* accrual analysis for the utility does not resolve accrual and discovery for these individual customers, particularly given their allegations of ongoing contamination and injuries.

- Plaintiffs have pleaded legally cognizable injuries under Alabama law: contamination of drinking water, physical invasion and impairment of property, emotional distress, and associated economic harms.

- Plaintiffs have met Rule 8's pleading requirements for negligence, nuisance, trespass, strict liability, battery, and wantonness, providing detailed allegations of duty, breach, causation, and damages.

For these reasons, Plaintiffs respectfully request that the Court:

DENY Defendant 3M Company's Motion for Judgment on the Pleadings in its entirety; and

In the alternative, GRANT Plaintiffs leave to amend their Complaint under Federal Rule of Civil Procedure 15(a)(2) rather than dismissing certain claims and withhold ruling on Defendant 3M's Motion so that Plaintiff may obtain the necessary discovery delineated in Plaintiffs' Rule 56 Affidavit.

Dated: December 23, 2025

Respectfully Submitted,

/s/ Dagney Johnson
Dagney Johnson (JOH180)
Attorney for Plaintiff

OF COUNSEL:
DAGNEY JOHNSON LAW GROUP
2120 1st Avenue North
Birmingham, Alabama 35203
Telephone No.: (205) 974-4860
Email: dagney@dagneylawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that, on December 23, 2025, the foregoing was served via electronic delivery through the CM/ECF system, which will forward copies to all counsel of record.

/s/ Dagney Johnson
*Attorney for Plaintiffs*