### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

**BRIDGETT WATSON ADAMS**,
**et al.,**
    Plaintiffs,

**v.**

**3M COMPANY,**
    Defendant.

**Case No. 4:24-cv-832-CLM**

## MEMORANDUM OPINION

Plaintiffs are around 600 customers of the Water Works and Sewer Board for the City of Gadsden who contend that Defendant 3M Company contaminated their drinking water by supplying PFAS to carpet manufacturers in Dalton, Georgia. (Doc. 1-1).[1] 3M moves for judgment on the pleadings, arguing that Plaintiffs' property-damage claims are untimely and their personal injury claims aren't viable. (Doc. 35). For the reasons stated within, the court **GRANTS** 3M's motion for judgment on the pleadings (doc. 35) and **DISMISSES** the complaint (doc. 1-1) **WITHOUT PREJUDICE**.

## BACKGROUND

Because a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6), *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018), the court states the facts as Plaintiffs plead them and assumes that all of their alleged facts are true, *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

---

[1] On June 27, 2025, Plaintiffs filed a document titled "Amended Complaint" that sought to correct the names of certain plaintiffs, remove certain plaintiffs, and add several new plaintiffs. (Doc. 26). But the court never granted Plaintiffs leave to file an amended complaint, and Plaintiffs' proposed amended complaint includes no factual allegations (*see id.*). Instead, "Plaintiffs reallege all allegations as set out in their previously filed Complaint." (*See id.*, p. 1). The court thus deems Plaintiffs' original state court complaint (doc. 1-1) as the operative complaint.

### A.    PFAS

Per-and poly-fluoroalkyl substances ("PFAS") are a group of synthetic chemicals that are found in a wide array of consumer and industrial products. (Doc. 1-1, ¶ 4). PFAS include perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS"). (*Id.*, ¶ 5). 3M manufactured PFOA and PFOS containing products in its Decatur, Alabama plant. (*Id.*, ¶ 6).

In May 2016, the EPA warned that exposure to elevated levels of PFOA and PFOS can lead to health problems, including cancer in adults and developmental defects in fetuses and breastfed infants. (*Id.*, ¶ 7). The EPA has also concluded that there's an association between PFAS exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, and pregnancy-induced hypertension and preeclampsia. (*Id.*, ¶ 8). According to the 2016 advisory, to provide protection from exposure to PFOA and PFOS in drinking water, combined concentration of these chemicals should be no greater than 0.07 ppb. (*Id.*, ¶ 7). In 2022, the EPA issued an interim health advisory that recommended that humans neither drink nor cook with water that has PFOA levels of 0.0004 or more parts per trillion ("ppt") or PFOS levels of 0.02 or more ppt. (*Id.*, ¶ 21).

### B.    Coosa River Contamination

3M supplied PFOA and PFOS containing products to carpet manufacturers in Dalton, Georgia. (*Id.*, ¶ 14). So the industrial wastewater discharged from these facilities has high levels of PFOA and PFOS. (*See id.*). Dalton Utilities processes the industrial wastewater from these carpet manufacturers at its wastewater treatment plant. (*Id.*). Dalton Utilities then sprays the processed wastewater over a 9,800 acre Land Application System ("LAS"). (*Id.*). The LAS is near the Conasauga River, so wastewater runoff from the LAS sometimes migrates into the river. *See Ex parte DuPont De Nemours, Inc.*, 2025 WL 1009062, at *7 (Ala. Apr. 4, 2025). Because the PFOA and PFOS chemicals resist degradation during the processing at Dalton Utilities, when the wastewater enters the Conasauga River the wastewater includes traces of PFOA and PFOS. (*See* Doc. 1-1, ¶ 14).

The Conasauga River is one of the five major tributaries of the Coosa River, which Gadsden Water uses to provide drinking water to its customers. (*Id.*, ¶ 16). Gadsden Water began regularly testing for PFOA and PFOS in its water supply following the issuance of the EPA's May 2016 health advisory, and it has consistently found PFOA and PFOS levels that combine to meet or exceed the PFOA levels of 0.0004 ppt and PFOS levels of 0.02 ppt. (*Id.*, ¶ 23). For example, in 2022, Alabama Department of Environmental Management ("ADEM") sampling test results showed Gadsden Water's treatment plants had PFOS levels of 27.0 ppt and PFOA levels of 25.0 ppt. (*Id.*, ¶ 18). Gadsden Water's current water filtration system cannot remove or reduce these high levels of PFAS in Plaintiffs' water supply. (*Id.*, ¶ 24).

## C.    This Lawsuit

Plaintiffs bring six claims against 3M under Alabama law: (1) negligence, (2) nuisance, (3) trespass, (4) battery, (5) strict liability for abnormally dangerous activity, and (6) wantonness. At bottom, Plaintiffs contend that 3M knew about the dangerous effects of PFOS and PFOA but sold PFOS and PFOA containing products to the carpet manufacturers and failed to warn the carpet manufacturers that use of these products could cause Plaintiffs' water source to become contaminated with PFAS. (*Id.,* ¶¶ 9–11). Nor did 3M, who had superior knowledge, warn Plaintiffs of the presence of these chemicals in their water source. (*Id.*, ¶¶ 19–20, 22).

Plaintiffs seek "monetary damages against Defendant 3M . . . for contaminating the water source that provides drinking water directly to the Plaintiffs." (*Id.*, ¶ 25). These monetary damages include "damages for mental anguish and emotional distress due to Plaintiffs' exposure to such harmful chemicals." (*Id.*). They also include compensation for "damages to real property, loss of use of property, out-of-pocket expenses and reasonably ascertainable future expenses." (*Id.*). Finally, Plaintiffs seek punitive damages and an injunction that would require 3M to stop PFAS from continuing to come onto Plaintiffs' properties. (*Id.*).

3

## STANDARD OF REVIEW

Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

"Judgment on the pleadings is appropriate when no issues of material fact are raised in the pleadings and the movant is entitled to judgment as a matter of law." *Jones v. NordicTrack, Inc.*, 236 F.3d 658, 660 (11th Cir. 2000). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone*, 910 F.3d at 1350. Thus, to survive a motion for judgment on the pleadings, the complaint must contain enough facts to state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## DISCUSSION

3M argues that the court should grant it judgment under Rule 12(c) for three reasons. First, the Alabama Supreme Court's recent decision in *Ex parte DuPont De Nemours, Inc.*, 2025 WL 1009062 (Ala. Apr. 4, 2025), establishes that Plaintiffs' property-damage claims are untimely. Second, Plaintiffs cannot recover personal injury damages because they have not alleged that they have developed any medical conditions linked to PFAS. Finally, Plaintiffs' trespass claims fail because Plaintiffs haven't alleged actual physical damage to their properties. The court addresses each argument in the order 3M made them.

### A.    Property-damage claims

Under Alabama law, a two-year statute of limitations applies to Plaintiffs' claims for negligence, nuisance, strict liability, and wantonness. *See* Ala. Code § 6-2-38(l). Plaintiffs' trespass and battery claims are subject to a six-year statute of limitations. *See* Ala. Code § 6-2-34(1) and (2). Based on the Alabama Supreme Court's holding in *Ex parte DuPont*, 3M contends that the statute of limitations for Plaintiffs' property-damage claims began to run in 2016. Thus, 3M says Plaintiffs' June 17, 2024, complaint was untimely.

The court tackles this argument in three parts. First, the court explains general principles on how to calculate the statute of limitations for toxic torts. Second, the court will review the Alabama Supreme Court's decision in *Ex parte DuPont*. Third, the court applies the key takeaways from these general

principles and *Ex parte DuPont* to Plaintiffs' claims.

### 1.      General principles

In Alabama, "[t]he statute of limitations begins to run when the cause of action accrues," which "is the date the first legal injury occurs." *Ex parte Abbott Lab'ys*, 342 So. 3d 186, 194 (Ala. 2021). A legal injury occurs "as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury." *See Ex parte Mobile Infirmary Assoc.*, 349 So. 3d 842, 847–48 (Ala. 2021) (emphasis omitted). Thus, under Alabama law, "[t]he plaintiff's ignorance of a tort or injury does not postpone the running of the statute of limitations until that tort is discovered." *Ex parte Abbott Lab'ys*, 342 So. 3d at 199.

That said, under the continuing torts doctrine, "a defendant's repeated tortious conduct which has repeatedly and continuously injured a plaintiff" can extend the statute of limitations if some of the tortious conduct occurred within the limitations period. *See Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220–21 (Ala. 1983). Plus, while Alabama's statutes of limitations generally apply to toxic tort claims brought under Alabama law, Congress has determined that a federally required commencement date should apply to state-law actions for damages caused by any hazardous substance released into the environment from a facility if the state's applicable limitations period would begin to run before the federally required commencement date. *See* 42 U.S.C. § 9658(a)(1) and (2). Under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), "the federally required commencement date" is "the date the plaintiff knew (or reasonably should have known) that [his] personal injury or property damages . . . were caused or contributed to by the hazardous substance . . . ." *See* 42 U.S.C. § 9658(b)(4)(A). So in certain circumstances, federal law preempts Alabama's rejection of a discovery rule for claims for "personal injury or property damage arising from the release of a hazardous substance . . . into the environment." *See CTS Corp. v. Waldburger*, 573 U.S. 1, 3–4 (2014).

### 2.      *Ex parte Dupont*

With these general principles in mind, the court turns to the Alabama Supreme Court's recent ruling in *Ex parte DuPont*, which held that Gadsden

5

Water's claims related to PFAS in the Coosa River accrued in 2016.

a. *Background*: In 2023, Gadsden Water sued DuPont De Nemours, Inc. and Daikin America, Inc. for manufacturing PFAS-containing products that Gadsden Water said contaminated the Coosa River. *See Ex parte DuPont*, 2025 WL 1009062, at *2–7.

Gadsden Water's claims against DuPont and Daikin were nearly identical to the claims Plaintiffs plead here:

> In summary, Gadsden Water alleges that DuPont and Daikin are manufacturers and sellers of PFAS products . . . . Gadsden Water further alleges that those defendants' PFAS products were sold at some point in time to carpet manufacturers in Dalton, Georgia, and that the carpet manufacturers in Dalton then discharged PFAS-contaminated wastewater into a wastewater-treatment facility operated by Dalton Utilities. According to Gadsden Water, Dalton Utilities failed to adequately treat the wastewater, and then it sprayed the wastewater onto a 9,800-acre area called the Land Application System ("LAS"). Gadsden Water alleges that runoff from the LAS migrated into the Oostanaula River, which then ran into the Conasauga River, which is one of the five major tributaries of the Coosa River. It is undisputed that the Coosa River is Gadsden Water's raw-water-intake source.

*See id.* at *7.

So you may ask why Gadsden Water didn't sue 3M in its 2023 complaint too? That's simple: Gadsden Water sued 3M for PFAS contamination back in 2016, and the parties settled. *See id.* at *1 & n.3. So 3M was off the table when Gadsden Water turned to DuPoint and Daiken in 2023. But the 2016 complaint against 3M left Gadsden Water with a problem: In its 2016 complaint, Gadsden Water alleged that it "began regular testing of PFOA and PFOS in its water supply following the issuance of the May 2016 EPA health advisory." *See id.* at *14. Stuck was this fact, Gadsden Water included no "allegation of when Gadsden Water first learned about the presence of harmful levels of PFAS in its water supply" in its 2023 complaint. *Id.*

DuPont and Daikin moved to dismiss the 2023 complaint, asserting that Gadsden Water's allegations in its 2016 complaint against 3M made clear that Gadsden Water's PFAS-related claims were untimely. *Id.* at *8. The Etowah County Circuit Court denied the motions, so DuPont and Daikin sought a writ of mandamus with the Alabama Supreme Court. *Id.* at *9.

b. *Holding*: The Alabama Supreme Court granted DuPont and Daikin's petition for writ of mandamus. *See id.* at *26. Taking judicial notice of Gadsden Water's 2016 complaint against 3M, the supreme court determined that the harm to Gadsden Water's "water source initially occurred in 2016." *Id.* at *14. The court then stated that "[t]he fact that in 2022 the EPA lowered its acceptable threshold of PFAS in drinking water did not create a new injury to Gadsden Water that restarted the applicable limitations period." *Id.* (emphasis omitted). And the court rejected Gadsden Water's argument that its claims were timely because the PFAS attributable to 3M are distinct from the PFAS attributable to DuPont and Daikin. *Id.* at *15.

Finally, the state supreme court determined that the continuing torts doctrine did not save Gadsden Water's claims. *See id.* at *15–19. Fatal to Gadsden Water's continuous tort argument was the complaint's failure to allege that DuPont and Daikin sold or supplied PFAS products to Dalton carpet mills within the applicable statutes of limitation. *See id.* at *18. The court recognized that Gadsden Water alleged "that DuPont and Daikin generally continue to manufacture and sell PFAS products." *Id.* But the court determined that "without a connection between that general conduct and the conduct that allegedly contaminates Gadsden Water's raw-water intake—the Dalton carpet mills' wastewater applied by Dalton Utilities to the LAS—Gadsden Water has not asserted a continuous tort against DuPont and Daikin within the applicable limitations periods." *Id.*

c. *Takeaways*: A few things stand out about the state supreme court's decision. First, the court found that this allegation in Gadsden Water's 2016 complaint against 3M established that Gadsden Water's first legal injury occurred in 2016: "Gadsden Water began regularly testing for PFOA and PFOS in its water supply following the issuance of the May 2016 EPA health advisory, and has consistently found PFOA and PFOS levels that combine to meet or exceed the 0.07 ppb limit." *Id.* at *14.

Second, the state court found that Gadsden Water failed to adequately allege a continuous tort because its complaint "expressly avoid[ed] stating that DuPont and Daikin continue to sell PFAS products to Dalton carpet mills." *Id.* at \*18. It did not matter that Gadsden Water's complaint did not specifically state that DuPont and Daikin's wrongful conduct had ceased. *Id.* Nor did Gadsden Water's argument that PFAS are an abatable nuisance save its claims from being barred by the applicable statutes of limitation. *See id.* at \*19.

### 3.    Application to Plaintiffs' claims

Applying *Ex parte DuPont*, the court finds that the statutes of limitations on Plaintiffs' property-damage claims began to run in 2016. Plaintiffs allege that "Gadsden Water began regularly testing for PFOA and PFOS in its water supply following the issuance of the May 2016 EPA health advisory, and it has consistently found PFOA and PFOS levels that combine to meet or exceed the PFOA levels of 0.0004 ppt and PFOS 0.02 ppt." (Doc. 1-1, ¶ 23). As explained, the Alabama Supreme Court found that similar allegations in Gadsden Water's 2016 complaint against 3M established that "harm to the water source initially occurred in 2016." *Ex parte DuPont*, 2025 WL 1009062, at \*14 (analyzing allegation that "Gadsden Water began regularly testing for PFOA and PFOS in its water supply following the issuance of the May 2016 EPA health advisory, and has consistently found PFOA and PFOS levels that combine to meet or exceed the 0.07 ppb limit"). And while the EPA's 2022 health advisory "lowered the acceptable threshold of PFAS in drinking water," the updated health advisory "did not create a new manifest injury." *See id.*

Nor do Plaintiffs' allegations show that the continuing torts doctrine saves Plaintiffs' claims from being untimely. Key to the continuing torts doctrine is evidence of "ongoing wrongful conduct" rather than "a single act followed by multiple consequences." *See Payton v. Monsanto Co.*, 801 So. 2d 829, 835–836 (Ala. 2001). Plaintiffs allege that "PFOA and PFOS have and continue to accumulate in the water, sediment, fish and other biota in the Coosa River upstream from Gadsden Water's intake at levels that are dangerous to humans." (Doc. 1-1, ¶ 17). Plaintiffs also assert that they "have been and continue to be exposed" to PFAS when they consume or use the contaminated water. (*Id.*, ¶¶ 19, 21). But missing from Plaintiffs' complaint is any allegation of "ongoing tortious conduct" by 3M "that is connected to the

continuing contamination of the Coosa River." *See Ex parte DuPont*, 2025 WL 1009062, at \*18. So Plaintiffs have "not asserted a continuous tort against [3M] within the applicable limitations periods." *Id.*; *see also id.* at \*19 ("[T]he general allegation of a continuous public nuisance does not save the plaintiff's claims against the defendant from the statute-of-limitations bar." (cleaned up)).

—

In sum, under Alabama law, the statutes of limitations for Plaintiffs' property-damage claims began to run in 2016. And Plaintiffs do not plausibly allege that the continuing torts doctrine applies to their claims against 3M. So under state law, Plaintiffs' 2024 property-damage claims are untimely. *See* Ala. Code § 6-2-38(l) (Two-year statute of limitations applies to negligence, nuisance, strict liability, and wantonness claims); Ala. Code § 6-2-34(1) and (2) (Six-year statute of limitations applies to trespass and battery claims).

That said, the court recognizes that CERCLA's discovery rule sometimes preempts state statutes of limitations for property damage caused by toxic torts. *See CTS Corp.*, 573 U.S. at 3–4. And the EPA has recently designated PFOA and PFOS as "hazardous substances." *See* 40 C.F.R. § 302.4. So there's an argument to be made that CERCLA tolls the statutes of limitations for PFOA and PFOS property-damage claims until "the date the plaintiff knew (or reasonably should have known) that the . . . property damages . . . were caused or contributed to by" PFOA or PFOS contamination. *See* 42 U.S.C. § 9658(a)(1) and (b)(4)(A). But Plaintiffs do not make this argument. And it is Plaintiffs' burden to show that CERCLA preemption applies. *See Barnes ex rel. Barnes v. Koppers, Inc.*, 534 F.3d 357, 362–63 (5th Cir. 2008). Plus, the complaint is silent about when Plaintiffs discovered or reasonably should have discovered that PFOA or PFOS contamination was causing their alleged property damage. Thus, Plaintiffs have failed to explain why they wouldn't have discovered that PFOA or PFOS were causing their alleged property damage when Gadsden Water found PFAS contamination in the Coosa River in 2016.

As pleaded, Plaintiffs' complaint establishes that their property-damage claims are time-barred. So the court will **GRANT** 3M's motion for judgment on the pleadings on Plaintiffs' property-damage claims.

9

## B.    Personal injury damages

Unlike property-damage claims, claims for personal injury damages do not accrue until the plaintiff suffers "a medically identifiable legal injury." *See Ex parte Spalding*, 2025 WL 2487687, at \*4–5 (Ala. Aug. 29, 2025); *see also Southern Bakeries, Inc. v. Knipp*, 852 So. 2d 712, 716 (Ala. 2002) (requiring "a manifest, present injury before a plaintiff may recover in tort"). And the complaint doesn't allege that Plaintiffs currently have any diseases or illnesses from their exposure to PFAS. So 3M says Plaintiffs' claims for personal injury damages suffer from the opposite problem of their property-damage claims—the personal injury claims were filed too early.

The court agrees. Alabama "law provides no redress for a plaintiff who has no present injury or illness." *Hinton ex rel. Hinton v. Monsanto Co.*, 813 So. 2d 827, 831–32 (Ala. 2001). So the Alabama Supreme Court has consistently held that fear of future illness from exposure to a hazardous substance isn't a legally compensable injury. *See, e.g.*, *Hinton*, 813 So. 2d at 828–32 (Class members exposure to PCBs "without a present injury attributable to that exposure" did not give rise "to a cognizable claim for medical monitoring."); *Southern Bakeries, Inc.*, 852 So. 2d at 717–18 (Fear that asbestos exposure would lead to asbestos-related disease failed to establish "any legally cognizable present injury."); *see also Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996) ("Under Alabama law, Farsian's fear that his [defectively designed heart] valve could fail in the future is not, without more, a legal injury sufficient to support his claim."). And in applying these cases, this court has found that alleging mere exposure to PFAS, without any accompanying claims of "disease or symptoms," is not enough to support a cause of action for personal injury damages. *See W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227, 1233 (N.D. Ala. 2016) (Kallon, J.). Thus, Plaintiffs' claims for personal injury damages are premature.

Because Plaintiffs have failed to show that their alleged personal injury damages have yet to accrue, the court will **GRANT** 3M's motion for judgment on the pleadings on Plaintiffs' claims for "damages for mental anguish and emotional distress due to Plaintiffs' exposure" to PFAS. (*See* Doc. 1-1, ¶ 25).

## C.   Trespass

That leaves 3M's argument that Plaintiffs have failed to state a claim for trespass. Trespass can be either direct or indirect. *See Borland v. Sanders Lead Co., Inc.*, 369 So. 2d 523, 527, 529 (Ala. 1979). A direct trespass occurs when "the intruding agent" can "be seen by the naked eye." *See id.* "[A]n indirect trespass occurs where the trespasser releases a 'foreign polluting matter' beyond the boundaries of his property knowing to a 'substantial certainty' that it will invade the property" of another. *Russell Corp. v. Sullivan*, 790 So. 2d 940, 946–47 (Ala. 2001). Because PFAS are foreign polluting matters that cannot be seen by the naked eye, Plaintiffs' trespass claim is for indirect trespass. To prove indirect trespass a plaintiff must show, "1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damage[ ] to the *res*." *Id.* at 947.

Plaintiffs have failed to adequately allege the fourth element of an indirect trespass claim. Plaintiffs allege that the PFAS contamination "has affected and is affecting the Plaintiffs' interest in the exclusive possession of their property." (Doc. 1-1, ¶ 41). Plaintiffs also say that they seek monetary damages to compensate them for "damages to [their] real property" and "loss of use of property." (*Id.*, ¶ 25). But nowhere in the complaint do Plaintiffs explain how the PFAS contamination has damaged their properties. For example, Plaintiffs "do not allege that the PFOA and PFOS in their domestic water supply have caused their pipes to erode, or that the presence of those chemicals in their lawn irrigation systems has damaged their grass." *See W. Morgan-E. Lawrence*, 208 F. Supp. 3d at 1236. And the contaminated water is the alleged trespassing agent, so "damage to the water itself cannot constitute substantial damages to the res." *Util. Bd. of Tuskegee v. 3M Co., Inc.*, 2023 WL 1870912, at *16 (M.D. Ala. Feb. 9, 2023) (Watkins, J.). As a result, Plaintiffs "have failed to plead the 'substantial damages to the res' required for an indirect trespass claim." *See W. Morgan-E. Lawrence*, 208 F. Supp. 3d at 1236. The court will thus **GRANT** 3M's motion for judgment on the pleadings on Plaintiffs' trespass claim.

### D.    Leave to Amend

3M asks the court to dismiss Plaintiffs' complaint with prejudice. But Plaintiffs contend that if the court finds their allegations deficient, the court should grant them leave to amend. Under Rule 15(a)(2), this court "should freely give leave" to amend the complaint "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). Thus, this court generally grants requests for leave to amend unless the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999).

Having considered these factors, the court finds it appropriate to give Plaintiffs ***one*** opportunity to correct the pleading deficiencies that the court has identified. Given that Gadsden Water first discovered PFAS in its water source in 2016, the court is skeptical that Plaintiffs will be able to show that their property-damage claims were timely filed. But the court agrees with Plaintiffs that it would be inappropriate at this stage for the court to accept as true 3M's contention that it stopped manufacturing or selling PFOA and PFOS containing products in 2002. The court judicially notices that in 2003 the EPA reported that 3M had discontinued its manufacture of PFOA and PFOS and "indicated that it would not resume the manufacture of PFOA for commercial sale." *See* EPA, Perfluorooctanoic Acid (PFOA), Fluorinated Telomers; Request for Comment, Solicitation of Interested Parties for Enforceable Consent Agreement Development, and Notice of Public Meeting, 68 Fed. Reg. 18,626, 18,628, 18,631 (Apr. 16, 2003).[2] The court, however, finds that these statements by the EPA in 2003 fail to establish that there is no "reasonable dispute" that 3M ***never*** resumed the manufacture or sell of PFOA or PFOS containing products. *See* Fed. R. Evid. 201(b). So whether Plaintiffs can plead a continuing tort for their property-damage claims in compliance with Rule 11(b)'s requirements, remains to be seen.

---

[2] "The contents of the Federal Register shall be judicially noticed . . . ." 44 U.S.C. § 1507.

It is also possible that Plaintiffs can show that (a) they are suffering from PFAS-related illnesses, and (b) their properties have been damaged by the PFAS contaminated water. So 3M has failed to establish that Plaintiffs cannot fix the pleading deficiencies with their claims for personal injury damages or trespass. Thus, the court's dismissal of Plaintiffs' complaint will be **WITHOUT PREJUDICE**. The court will set Plaintiffs' deadline to file an amended complaint at a later date.

## CONCLUSION

For these reasons, the court **GRANTS** 3M's motion for judgment on the pleadings (doc. 35) and **DISMISSES** the complaint (doc. 1-1) **WITHOUT PREJUDICE**. The court will enter a separate order that carries out this ruling.

**Done** and **Ordered** on April 20, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE